# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ERIC JORDAN,                              *

    Petitioner,                          *

                                    Criminal No. RDB-11-0094

    v.                                   *

UNITED STATES OF AMERICA        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION TO VACATE OR CORRECT ILLEGAL SENTENCE

Petitioner Eric Jordan, through his attorney, C. Justin Brown, Brown Law, hereby moves this Honorable Court, pursuant to 28 U.S.C. §2255, to vacate or correct his illegal sentence. Jordan, 56, currently resides at Allenwood USP and is serving an 864-month sentence.

By this Petition, Jordan raises multiple claims entitling him to a new trial or a new sentence. The claims are as follows:

(1) Trial counsel was ineffective for failing to object when the Court abridged Jordan's Sixth Amendment right to testify in his own defense, thereby precluding the Fourth Circuit Court of Appeals from taking action on an error it termed an "abuse of discretion" by the trial court;

(2) Trial counsel was constitutionally ineffective for failing to object to the prosecutor's closing arguments, which improperly weighed the veracity of witnesses and castigated Jordan for testifying in his own defense;

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 2 of 48

(3) Under *Rosemond v. United States*, 572 U.S. 65 (2014), all of Jordan's convictions for aiding and abetting an offense under 18 U.S.C. § 924(c) must be vacated, as he was convicted of conduct that no longer constitutes a crime;

(4) Under *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Davis v. United States*, 588 U.S. ___ (2019), Jordan's § 924(c) convictions are no longer valid because the underlying offenses related to Hobbs Act conspiracy do not qualify as crimes of violence, and appellate counsel was ineffective for failing to timely raise this issue;

(5) Jordan's classification as an armed career criminal must be reversed because the predicate convictions supporting the classification no longer count as "crimes of violence" under 18 U.S.C. § 924(e), and appellate counsel was ineffective for failing to raise this issue;

(6) Jordan's § 924(c) charges, as set forth in the indictment, are duplicitous, and it was ineffective assistance of trial counsel and appellate counsel to not raise this issue; and

(7) Under *Rehaif v. United States*, 588 U.S. ___ (2019), Jordan's conviction under 18 U.S.C. § 922(g) must be vacated because it was obtained without proof of an essential element and therefore it constitutes a violation of United States law and a miscarriage of justice.

## I. PROCEDURAL HISTORY

Eric Jordan was indicted, along with co-defendant Aaron Graham, on February 23, 2011, and charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The Government obtained a superseding indictment against both

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 3 of 48

defendants on April 27, 2011, adding additional charges against Jordan: possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d), three counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), and multiple counts of Hobbs Act robbery (and conspiracy), in violation of 18 U.S.C. § 1951.

The parties litigated numerous pre-trial motions, including motions to suppress identification, tangible evidence, cell phone data, and cell site data. Graham and Jordan requested severance of their trials orally and in writing. The defendants' motions were denied.

Both defendants proceeded to a joint trial, which lasted nine days. Jordan was represented by Stuart Simms and Lara Abelson, of Brown Goldstein & Levy, pursuant to the Criminal Justice Act. The Jury found each defendant guilty of all charges. On October 12, 2012, Judge Richard D. Bennett sentenced Jordan to 864 months imprisonment. Graham received a sentence of 1,764 months imprisonment.

Jordan and Graham appealed to the Fourth Circuit Court of Appeals, which, on August 5, 2015, affirmed their convictions. In affirming, the Fourth Circuit found that the Government had violated the defendants' Fourth Amendment rights when it obtained cell-site location information without a warrant, but that the violation was excused under the good-faith exception. The Fourth Circuit also found that the trial court had abused its discretion in limiting Jordan's testimony, but that counsel forfeited the issue by failing to note an objection. *United States v. Graham*, 796 F.3d 332 (4th Cir. 2015).

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 4 of 48

The Government obtained an *en banc* review of the finding that the Government violated the defendants' Fourth Amendment rights, and the full panel of the Fourth Circuit reversed on this issue, rendering an opinion on May 31, 2016.

Jordan and Graham petitioned the Supreme Court for a writ of certiorari, but were denied on June 28, 2018. They sought a rehearing on the petition for writ of certiorari but that too was denied on August 24, 2018.

This Motion, pursuant to 28 U.S.C. §2255, is timely filed.

## II. FACTS

In the afternoon of February 5, 2011, a man robbed a McDonald's and a nearby Burger King. He brandished a small handgun with a pearl handle. Employees from both restaurants described the man as wearing a gray jacket with a distinctive stripe pattern. Employees at both restaurants saw the man get into the passenger side of a dark Ford pickup truck that sped away.

As a police officer was talking to a witness, the witness saw a similar truck drive by. Police stopped several pickup trucks that turned out not to be the truck in question. Approximately fifteen minutes later, the police followed another Ford pickup truck, pulled it over, and initiated a felony arrest.

The driver was Eric Jordan and the passenger was Aaron Graham. The police found a gun on the floor under the passenger seat and cash in the center console. Two cell phones were lying on the seat. Graham had about $500 in wads of cash in his pockets, and Jordan carried about $240, folded in one pocket.

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 5 of 48

Police brought two victims to the scene of the arrest for a "show up" identification. One identified Graham as the man who robbed the McDonalds, and one recognized Graham's jacket as the same one worn by the person who robbed the Burger King. No witness identified Jordan.

After the arrest, detectives compared the jacket to the one visible in surveillance videos from other unsolved robberies, including a robbery of a 7-11, a jewelry store, a Shell gas station, and a Dollar Tree. Likewise, they compared the truck with a Ford F150 pickup truck visible in surveillance videos from the scenes of other robberies. One of the men at the jewelry store, Dollar Tree, and 7-11 appeared to wear the same jacket. The truck that was visible in surveillance video outside the jewelry store, 7-11, and Shell station appeared to be the same truck.

The video surveillance of these robberies showed a small handgun. The video from the Shell station robbery, however, showed multiple people holding weapons, one of which appeared to be a short-barreled shotgun with tape around the handle. The video was dark and unclear. One of the victims testified that the person holding the shotgun was young, approximately 5'6" to 5'8" tall, and 120 to 140 pounds. At trial, the government theorized that Jordan was the robber, although he was in his late forties and nearly six feet tall. The jacket Jordan was wearing when he was arrested had similarities to the one in the video of the Shell robbery.

The police found no physical or forensic evidence at the scenes of any of the robberies, with few exceptions. The police recovered fingerprints from the McDonald's

and the jewelry store that matched other people who had criminal records. Police recovered one finger print from a box of candy at the Dollar Tree that matched Graham.

The police obtained search warrants for both Graham's and Jordan's homes. At Jordan's house, the police found a sawed-off shotgun in a utility closet and two handguns. They also found clothing that appeared to match that depicted in the video from the Shell station robbery. At Graham's house, the police found watches and rings and a holster for a firearm.

The government introduced cell site location information (CSLI) in an attempt to establish that the defendants had been at similar locations before and during the robberies – but this evidence was a matter of uncertainty by the Government's own non-expert witness.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

## III. LEGAL STANDARD

Courts evaluate claims of ineffective assistance of counsel by applying the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that a petitioner first establish that his trial attorney performed deficiently by committing an unreasonable error. *Id.* at 687. The reasonableness of the attorney's performance is to be measured against the "prevailing norms of practice." *Id.* at 689; *Wiggins v. Smith*, 539 U.S. 510, 522 (2003).

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 7 of 48

*Strickland*'s second prong requires that the petitioner establish that his trial attorney's deficient conduct prejudiced the defense. 466 U.S. at 689. To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Strickland* defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id*. This standard of proof is *less than* preponderance of the evidence. *Id.* at 693 ("We believe that a petitioner need not show that counsel's deficient performance more likely than not altered the outcome [.]").

Critically, all criminal defendants are equally entitled to effective assistance of counsel under the Sixth Amendment – regardless of actual guilt or innocence. *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986) ("[W]e have never intimated that the right to counsel is conditioned upon actual innocence. The constitutional rights of criminal defendants are granted to the innocent and the guilty alike.").

Other claims raised in this petition are questions of law and must be reviewed *de novo*.

## IV. CLAIMS

1. <u>**Trial Counsel was ineffective for not objecting when the Court limited Jordan's testimony in his own defense.**</u>

████████████████████████████████████

███████████████████████████████████████

██████████████████████████

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 8 of 48





Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 10 of 48



Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 11 of 48









14

Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 15 of 48









Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 19 of 48



████████████████████████

████████████████████████████

██████████████████████

## 2.  <u>**Failure to object to prosecutorial misconduct during closing arguments.**</u>

Trial counsel was constitutionally ineffective for failing to object to improper remarks by the prosecutor during closing arguments. The prosecutor's remarks constituted reversible error because they (1) improperly accused Jordan of lying; (2) weighed the credibility of witnesses and (3) criticized Jordan for exercising his unequivocal right to testify in his own defense.

This court has "recognized that it is highly improper for the government to refer to a defense witness as a liar." *United States v. Moore,* 11 F.3d 475, 481 (4th Cir.1993); *see, e.g., Woods,* 710 F.3d at 202 (prosecutor improperly stated that defendant "lied ... under oath when he testified this morning"). Moreover, it is improper for the prosecutor to comment on the veracity of witnesses. As explained in *United States v. Moore*, 710 F.2d 157, 159 (4th Cir. 1983), the prejudice arising from such expression is twofold. First, this may cause the jury to improperly give weight to the prosecutor's personal views. Second, this may cause the jury to infer, from the prosecutor's language, that he or she had access to extra-judicial information that was not available to the jury. *Id.*

A court will find ineffective assistance of counsel when trial counsel fails to object to improper vouching of witnesses if the case turns on witness credibility – as it does here. In *Hodge v. Hurley*, the Sixth Circuit found that trial counsel's failure to object to the prosecutor's closing argument was objectively unreasonable. 426 F.3d 368, 385 (6th

Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 21 of 48

Cir. 2005). In *Hodge*, the prosecutor accused the defendant, who took the stand in his own defense, of lying, stated the complaining witness was "completely believable," and misrepresented the testimony of another witness, among other problems. *Id.* at 386. The prejudice prong of *Strickland* was satisfied because there was a lack of physical evidence at trial and ultimately the case came down to a jury determination of which witness was more credible: the defendant or his ex-girlfriend who testified against him. *Id.* at 386-87.

Similarly, in *Jordan v. Hepp*, the Seventh Circuit found that the defendant was prejudiced by the prosecutor's improper vouching of witnesses because the case turned on witness credibility. 831 F.3d 837, 848 (7th Cir. 2016). The court remanded on the issue of whether there was a strategic reason not to object to the closing argument. *Id.* at 850. The lower court found that because trial counsel did not view the comments as improper, failing to object was not strategic. *Jordan v. Hepp*, 260 F. Supp. 3d 1046, 1051 (E.D. Wis. 2017). *See Hicks v. Hepp*, 871 F.3d 513, 529-530 (7th Cir. 2017) (finding that improper statements during closing arguments were troubling because the jury clearly considered prosecutor's closing remarks about adequate punishment but ultimately was procedurally barred from granting relief).

Here, the prosecutor made multiple comments that unfairly prejudiced Jordan and caused his trial to be unfair. *See Moore*, 710 F. 2d at 159 (considering prosecutor's improper comments during closing arguments and invoking Ethical Canon 7–24, Maryland Code of Professional Responsibility, and Rule 3.4(e) of the American Bar Association's proposed Model Rules of Professional Conduct).

Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 22 of 48



Finally, making matters worse, the prosecutor then sought to bolster the credibility of the police testimony: "The fact that the police officers in this case are being criticized is virtually an insult… [T]hey did exemplary police work… And they did a terrific job in this case." Tr. 4/27/12 p. 92.

Under the circumstances of this case, there is no legitimate strategic reason why defense counsel should not have objected to these remarks. Nor is there any reason why defense counsel should not have requested curative jury instructions from the Court reminding the jurors that (1) they alone were responsible for determining the credibility of witnesses and (2) Jordan, as a criminal defendant, had an absolute right to testify in his own defense, and that they could not hold the fact that he testified against him.

Defense counsel's failure to object to these comments by the prosecutor, and request remedial measures, amounts to ineffective assistance of counsel in violation of the Sixth Amendment.

### 3. Under *Rosemond v. U.S.*, Jordan cannot be guilty of aiding and abetting a § 924(c) offense.

Jordan's convictions for aiding and abetting under 18 U.S.C. § 924(c) must be reversed because he was convicted of these offenses without any advance knowledge that his co-conspirator would possess and use a handgun in the commission of the robberies. This claim is cognizable under 28 U.S.C. § 2255(a) as a sentence "imposed in violation of the Constitution or laws of the United States."

During the course of Jordan's appeal, the Supreme Court decided *Rosemond v. United States*, which held that, in order to prove aiding and abetting of a § 924(c) crime, the Government had to prove that the defendant "actively participated in the underlying … violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." 572 U.S. 65, 67 (2014).[1]

Because the Government never introduced evidence that Jordan had advance knowledge that a gun would be used in any of the robberies, and because the Jury was

---

[1] Because the *Rosemond* opinion issued during Jordan's direct appeal, this is not a retroactive application and there is no need to undertake an analysis under *Teague v. Lane*, 489 U.S. 288 (1989). This issue was raised by Jordan in a January 16, 2014, letter to the Fourth Circuit clerk (Doc. 115) and an April 24, 2014, Motion for Leave to File Supplemental Brief (Doc. 124). The Motion was denied without explanation and without addressing the claim on May 19, 2014 (Doc. 127). To the extent counsel did not properly raise *Rosemond* in this context, or did not seek a stay to flesh out this issue, Jordan raises that as an alternative claim of ineffective assistance of appellate counsel.

never instructed to consider this question of advance knowledge, the principles of *Rosemond* apply to Jordan and his convictions on counts 10, 12 and 17 must be vacated.

The facts in this case are directly on point with *Rosemond*. The Government charged Jordan with § 924(c) violations in counts 10, 12 and 17 under aiding and abetting theories. The Government's theory was that Jordan was an unarmed participant in the Shell station armed robbery and that he was an unarmed getaway driver in the Burger King and McDonald's armed robberies that occurred outside his presence (Rosemond was also an alleged getaway driver). The case against Jordan was purely circumstantial; he was never identified by anyone as a participant in any robbery.

There was no evidence presented that Jordan was aware that Graham used, or planned to use, a gun to commit a robbery. Witnesses said that there was only one robber (whom they identified as Graham), and the government concedes that Jordan was not inside the buildings when the robberies occurred.

There also was no evidence presented that Jordan was involved in the planning or preparation of the fast food robberies. Although the cell phone records were circumstantial evidence that Jordan and Graham spoke to each other (and to others) prior to the robberies, this mere association between the two does not create a logical inference that Jordan knew that Graham intended to use a gun to commit a robbery.

The government's case against Jordan rested almost exclusively on the fact that he was driving Graham's pickup truck, with Graham in the passenger seat, several minutes after the second robbery occurred, and that when Graham was taken into custody police discovered a gun hidden underneath his seat, and numerous large clumps of wadded up

24

cash stuffed into Graham's pockets. (In contrast, Jordan had only one neatly folded set of bills, along with his business card, in one pocket). Tr. 4/18/12 p. 100.

The Government's own theory was that Graham had the pistol hidden in his pocket when he got into the vehicle that Jordan was driving, and that he removed it from his pocket and placed it under his seat as the police approached. Tr. 4/27/12 p. 89-90. Regardless, the Government never introduced evidence that Jordan knew about the pistol *prior* to the robberies.

Jordan testified that he did not participate in any robberies, that he did not know that his alleged accomplice had brought a gun into the car, and that any weapons found in a subsequent search of his closet (weeks later) would have been placed there without his knowledge. Tr. 4/26/12 p. 97-98, 102-03. At the Rule 29 hearing, the Court determined that Jordan did not possess "in any way, shape or form" the gun that was found in his codefendant's vehicle shortly after the fast food robberies.  Tr. 4/25/12 p. 150.

The Jury was instructed that it could find Jordan guilty if the evidence established that "the defendant had knowledge or specific intent to advance the use of the firearm, or in other words, that he directly facilitated or encouraged the use or carrying of the weapon." Tr. 4/27/12 p. 154. Thus, the instruction never forced the Jury to consider the "advance knowledge" element required by *Rosemond*. *Id*. at 67.

Applying the principles of *Rosemond*, Jordan's convictions for aiding and abetting various § 924(c) offenses must be vacated. *Rosemond* narrowed the scope of what conduct constitutes an aiding and abetting crime under § 924(c). The facts adduced at

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 26 of 48

trial do not establish that Jordan had advance knowledge that a gun would be used in the robberies. Nor was the Jury charged with answering this question.

Jordan's case is extremely similar to another case decided in this district: *United States v. Franklin*, 11-cr-MJG (Doc. 353). In that case, Judge Garbis reversed a conviction for aiding and abetting a § 924(c) conviction in which the case had been on appeal at the time when cert was granted in *Rosemond*. The district court ruled, on a § 2255 petition, that, regardless of trial counsel's failure to raise the issue during the direct appeal, *Rosemond* was to be applied retroactively. The court also found that, when the defendant was charged under both an aiding and abetting theory and a conspiracy theory pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946), and it was impossible to determine which theory the jury convicted on, the court had to assume the jury acted on the ground that would no longer support the conviction (*i.e.* the aiding and abetting ground).[2] Finally, the court found that the facts adduced at trial were not enough to prove "advance knowledge," as required by *Rosemond*, beyond reasonable doubt. Thus, the § 924(c) conviction was reversed.

Jordan's issue is nearly identical to Franklin's, but stronger. In Jordan's case, *Rosemond* issued during the direct appeal, so retroactivity is not a concern. Meanwhile, Jordan (like Franklin) was charged in the alternative as either an aider and abettor or a co-conspirator. Like Franklin, the jury was never asked to determine whether Jordan had "advance knowledge" and the facts presented at trial were certainly not enough to prove

---

[2] *See Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled on other grounds by Burke v. United States*, 437 U.S. 1 (1978).

this. The bottom line is simple: Jordan's 924(c) convictions in counts 10, 12 and 17 must

be vacated under the principles set forth in *Rosemond*.

### 4. **Neither Hobbs Act conspiracy nor Hobbs Act robbery is a crime of violence for purposes of § 924(c) following the Supreme Court's rulings in _Johnson_ and _Davis_.**

Jordan was charged with three counts of possessing and brandishing a firearm in

furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Each of these

charges relied on either Hobbs Act conspiracy or Hobbs Act robbery as the underlying

crime of violence.

Since the Supreme Court's ruling in *Johnson v. United States*, 135 S. Ct. 2551

(2015), and more recently *Davis v. United States*, 588 U.S. ___ (2019), these underlying

offenses no longer qualify as predicates for purposes of § 924(c). Jordan's convictions,

therefore, are in violation of the law and must be vacated because his conduct does not

satisfy the elements of the offense.

As a separate ground, Jordan's appellate counsel was constitutionally ineffective

for failing to raise a timely *Johnson* challenge during the pendency of Jordan's direct

appeal. *See United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) (permitting

appellants to supplement their appeal after the Supreme Court issued an intervening

opinion giving rise to a new issue).

#### a. The Government's alternative theories of conviction.

As a threshold matter, the Court must determine which of two alternative predicate

offenses is controlling for the purpose of each § 924(c) offense. This is necessary because

the Government charged each § 924(c) count with alternative qualifying offenses as a

predicate "crime of violence": either Hobbs Act conspiracy or Hobbs Act robbery.

This dual theory by the Government was set forth in the Superseding Indictment

and it was articulated by the Court in jury instructions:

> A crime of violence under this section includes the offense of conspiracy to
> commit robbery in violation of the Hobbs Act and the offense of Hobbs Act
> robbery. I instruct you specifically that the offense of conspiracy to commit
> robbery in violation of the Hobbs Act and the Hobbs Act robbery are
> crimes of violence.

Tr. 4/27/12 p. 151.

While this manner of charging presents separate problems, *see infra* Issue # 6, for

purposes of this analysis, the Court must conclude that, if one of the grounds is invalid as

a predicate for the § 924(c) offense, that is the ground upon which the Jury rested its

conviction – and reversal is merited. There are four separate reasons why this Court must

reach this conclusion.

First, where alternative theories are charged, the analysis adopted under *Taylor v.

United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), is

instructive. These cases hold that if the *Shepard*-approved documents (such as the

charging document, jury instructions, and verdict sheet) do not "necessarily," *i.e.*,

conclusively, establish that the defendant was convicted of one element versus the other,

and one of the multiple elements does not qualify as a "crime of violence," then the court

must assume that the defendant was convicted of the non-qualifying element, and the

relevant offense cannot qualify as a "crime of violence." *See Shepard*, 544 U.S. at 20;

*Taylor*, 495 U.S. at 602; *United States v. Vann*, 660 F.3d 771, 774-75 (4th Cir. 2011) (en

28

banc) (stating that because *Shepard*-authorized documents failed to establish the subsection of the offense to which the defendant necessarily pled guilty, the court had to assume that the defendant pled guilty to the non-qualifying subsection); *see also Curtis Johnson*, 559 U.S. at 137 (stating that where the federal sentencing court cannot determine upon which of the alternative elements a defendant's conviction necessarily rests, the court cannot "conclude that [the conviction] rested upon anything more than the least of these acts").

In this case, the Superseding Indictment and jury instructions fail to reveal which of the two predicate offenses the § 924(c) convictions necessarily rested. Therefore, the Court must conclude that the conviction rested on the least of these alternative offenses.[3]

A second ground for determining which predicate the jury relied on in convicting Jordan of the § 924(c) counts can be found in *Stromberg v. California*, 283 U.S. 359, 368 (1931).

The Supreme Court and the Fourth Circuit have held that when a trial judge instructs the jury on alternative grounds for conviction, the jury returns a general verdict of guilty, and it is impossible to tell whether the conviction rested on the invalid ground, the verdict must be set aside if one of the grounds for conviction is legally invalid. *See Stromberg v. California*, 283 U.S. 359, 368 (1931); *Yates v. United States*, 354 U.S. 298, 312 (1957) (requiring "a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury

---

[3] The verdict sheet referenced only Hobbs Act robbery for the §924(c) counts, but there is no way of knowing how the jury interpreted this inconsistency with the jury instructions.

selected") *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978);

*United States v. Head*, 641 F.2d 174, 179 (4th Cir. 1981) (agreeing "that *Stromberg v.*

*California* compels an appellate court to reverse where a general jury verdict renders it

impossible to say whether a defendant was convicted under an erroneous or a valid view

of the law") (internal citation omitted).

A third way of considering the alternative theories set forth by the Government is

under a duplicity analysis. An indictment is duplicitous when it charges two separate

crimes in one count. The danger is that the jury might convict in a manner that is not

unanimous. For example, half the jury might have found that the defendant was guilty on

one ground, and another half of the jury could have found guilt on the other. Under the

circumstances of this case, it follows, there in no way of knowing whether the Jury

unanimously found Jordan to be guilty of any of the § 924(c) counts because there in no

way of knowing whether the Jury unanimously found either Hobbs Act robbery or Hobbs

Act conspiracy as a predicate. *See infra*, Issue # 6. Thus, the Court cannot possibly reach

the conclusion that the Jury found unanimously on the valid grounds of conviction (if

such a ground exists).

Finally, as a fourth way to consider the alternative-predicates problem, the Court

must consider the principles set forth in *Alleyne v. United States*, 570 U.S. 99 (2013).

That is, the predicate offenses supporting the § 924(c) counts must be found by a jury

(and not a judge). Because the Jury was incorrectly instructed with alternative theories, it

is impossible to divine the intent of the jurors. With this being the case, the Court cannot

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 31 of 48

now look back at the facts of the case and make a determination of which qualifier

sustained the conviction.

Here, the Jury was instructed that the predicate "crime of violence" for the §

924(c) count could be one of two offenses. For the reasons described above, if any of the

predicates alleged in the § 924(c) count is found *not* to be a "crime of violence" as a

matter of law under § 924(c)(3), then the conviction must be set aside, because it is

impossible to determine whether the conviction was based on that illegal and

unconstitutional ground.

### b. Hobbs Act conspiracy is not a crime of violence under § 924(c)'s force clause or residual clause.

Jordan's § 924(c) convictions for using a firearm in relation to a "crime of

violence" are void and must be vacated so long as any of the convictions are based on

Hobbs Act conspiracy.

Under § 924(c), "crime of violence" is defined as follows:

> (3) For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause – § 924(c)(3)(A) – is commonly referred to as the force clause.

The other – § 924(c)(3)(B) – is commonly referred to as the residual clause. For Jordan's

§ 924(c) convictions to stand, the predicate offense must constitute a "crime of violence"

under one of the two definitions.

The Fourth Circuit recently held that Hobbs Act conspiracy does not qualify as a crime of violence under the force clause because an agreement to violate the Hobbs Act "does not invariably require the actual, attempted, or threatened use of physical force." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019). The court stated that, "when a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." 914 F.3d at 233.

The residual clause of § 924(c)(3)(B) was recently deemed unconstitutionally vague by the Supreme Court in *Davis v. United States*, 588 U.S. ___ (2019).

The combination of *Simms* and now *Davis* makes it settled law that Hobbs Act conspiracy does not count as a crime of violence for purpose of § 924(c) – because it satisfies neither the force nor the residual clause.

### c. Hobbs Act robbery categorically fails to qualify as a crime of violence under the "force" clause.

Not only does Hobbs Act conspiracy not qualify as a crime of violence for the purpose of § 924(c), but Hobbs Act robbery also does not qualify.

In determining whether an offense qualifies as a "crime of violence" under the "force" clause, sentencing courts must employ the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *Simms*, 914 F.3d at 233. This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Id*.

In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition. *See United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012).

If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence." As a result, post-*Descamps*, for an offense to qualify as a "crime of violence" under the "force" clause, the offense must have as an element, the use, attempted use, or threatened use of "physical force" against another person or property. 18 U.S.C. §924(c)(3)(A). And "physical force" means violent force – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

Applying the categorical approach here, Hobbs Act robbery does not qualify as a "crime of violence" because the full range of conduct encompassed in the elements of the offense fails to satisfy the force clause. This is demonstrated by the relevant *Sands & Seifert* pattern jury instructions, which state the following:

> Instruction 50-5 2nd Element -Unlawful Taking by Force, Violence, or Fear
> The second element the government must prove beyond a reasonable doubt is that the defendant unlawfully took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future.
> In considering whether the defendant used, or threatened to use force, violence or fear, you should give those words their common and ordinary meaning, and understand them as you normally would. The violence does not have to be directed at the person whose property was taken. The use or threat of force or violence might be aimed at a third person, or at causing economic rather than physical injury. A threat may be

made verbally or by a physical gesture. Whether a statement or physical gesture by the defendant actually was a threat depends upon the surrounding facts.

Instruction 50-6 Fear of Injury

    As I have just instructed you, you must determine whether the defendant knowingly and willfully threatened to use, force, violence, or fear, to unlawfully obtain the property. Fear exists if a victim experiences anxiety, concern, or worry over expected personal harm or business loss, or over financial or job security. The existence of fear must be determined by the facts existing at the time of the defendant's actions.

*Sands & Seifert, Modern Pattern Jury Instructions* (emphasis added).

In this case, the Court instructed the Jury on Hobbs Act robbery in a manner consistent with the pattern instructions:

> First, that a person knowingly obtained or took the property of another or from the presence of another. Second, that the person took this property against the victim's will by actual or threatened force, violence, or fear of injury, whether immediately or in the future. And third, that as a result of the person's actions, or those of others whom he aided and abetted, interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree.

Tr. 4/27/12 p. 144-45.

The Court here specifically instructed the jury that, "[t]he use or threat of force or violence might be aimed at a third person or at causing economic rather than physical injury." *Id*. at 145. This Court further instructed that "[f]ear exists if a victim experiences anxiety, concern, or worry over expected personal harm, business loss or other financial jobs or security – or job security." *Id*. at 146. Thus, the Jury in this case was instructed that the elements of Hobbs Act robbery could be met by the threat of economic rather than physical injury. This directly contradicts the requirement that a "crime of violence"

Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 35 of 48

under § 924(c) requires violent physical force "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.

Hobbs Act robbery, however, can be committed via threats to devalue some intangible economic interest like a stock holding or contract right. It goes without saying that such threats are not threats of physical force – let alone violent physical force against a person or property as required under the § 924(c) force clause. For this reason, Hobbs Act robbery – just like Hobbs Act conspiracy – does not properly count as a "crime of violence" and it cannot possibly sustain a conviction under 18 U.S.C. § 924(c).

## **5. Jordan should not have been sentenced as an Armed Career Criminal.**

Jordan cannot stand convicted under the Armed Career Criminal Act (ACCA) because two of his prior convictions do not qualify as predicates under 18 U.S.C. §924(e). One of the convictions is for Maryland common law assault and another is for Maryland common law assault with the intent to rob. Because these offenses can occur with no force at all or *de minimus* force, neither counts as a categorical "crime of violence."

Jordan raises this issue under two separate theories. First, Jordan's sentence is illegal because he was sentenced to 15 years under the ACCA when he did not in fact have three qualifying prior convictions. Thus, his sentence exceeds the 10-year maximum sentence for a violation of 18 U.S.C. § 922(g), and is a violation of United States law. *See* 18 U.S.C. § 924(a)(2) (setting forth maximum sentence).

Second, Jordan raises this issue as a claim of ineffective assistance of appellate counsel because appellate counsel failed to raise this issue during the pendency of the

appeal, when the Fourth Circuit issued its opinion in *United States v. Royal*, 731 F. 3d 333, 342 (4th Cir. 2013) (determining that Maryland second-degree assault was not a crime of violence).

Jordan's sentence for Count 2, unlawful possession of a firearm in violation of §922(g), was enhanced under the Armed Career Criminal Act (ACCA), which imposes a mandatory minimum sentence of 15 years on any defendant in violation of § 922(g) if that defendant has three previous convictions for "a violent felony or a serious drug offense." Jordan's Presentence Report (PSR) lists four prior convictions as ACCA predicates. *See* PSR at ¶ 105. The Court sentenced Jordan to the mandatory minimum term of 15 years for Count 2.

Under the Armed Career Criminal Act (ACCA), a prior offense qualifies as a "violent felony" if it is "punishable by imprisonment for a term exceeding one year" and it:

    (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii)    is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

§ 924(e)(2)(B). The Supreme Court has struck down as unconstitutionally vague the "residual clause" in subsection (ii) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015). Thus, to qualify as an ACCA predicate, a prior conviction must satisfy subsection (i) and have as an element the use of force. The Supreme Court has

Case 1:11-cv-00094-RDB   Document 249   Filed 07/08/19   Page 37 of 48

held that the "physical force" described in the ACCA must mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010).

Violent force is not an element of two of the four prior convictions cited by the PSR as ACCA predicates. First, Jordan's 1979 conviction for Maryland common law assault (PSR ¶ 89) is not categorically a crime of violence because it can be satisfied with *de minimis* force or no force at all. The same applies to Jordan's 1981 conviction for assault with intent to rob (PSR ¶ 90).

### a. Maryland assault.

The Fourth Circuit's holding in *United States v. Royal*, 731 F. 3d 333, 342 (4th Cir. 2013), is controlling and leaves no doubt that Maryland assault is not a predicate crime of violence for purposes of the ACCA. In Maryland, common law assault encompasses an attempted battery, battery, or an intentional placing of a victim in reasonable apprehension of an imminent battery. *Lamb v. State*, 93 Md. App. 422 (1992). Because battery includes non-violent acts such as "kissing without consent, touching or tapping, jostling, and throwing water upon another," *Epps v. State*, 333 Md. 121, 127 (1993), it is not categorically a crime of violence, and it does not count as an ACCA predicate. *See United States v. Royal*, 731 F. 3d 333, 342 (4th Cir. 2013) (reaching same conclusion for second-degree assault, the statutory equivalent of common law assault, which encompasses battery).

Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 38 of 48

### b. Maryland assault with the intent to rob.

The same logic applies to Jordan's 1981 conviction for assault with intent to rob (PSR ¶ 90). This offense is defined in Maryland law as having the following elements: (1) an assault on the victim; (2) by the accused; (3) with the intent to rob. *Dixon v. State*, 302 Md. 447, 451 (1985).

The first element – assault – is a reference to the common law offense of assault. As described above, this can be completed by a non-violent battery. *See Royal*, 731 F.3d at 342. Because the assault element of the offense is not categorically a crime involving "violent force," *Curtis Johnson*, 559 U.S. at 140, it cannot be said that the offense of assault with the intent to rob is a categorical crime of violence for purposes of the ACCA.

Even if the "intent to rob" portion of the conviction were to be treated separately for purposes of this analysis, that would still not meet the definition of a crime of violence under the ACCA.

Maryland robbery does not satisfy the Elements Clause because it does not require the use, attempted use, or threatened use of "physical force" as that term has been interpreted by the Supreme Court.

The Supreme Court has twice affirmed that an offense does not include as an element the use or threatened use of "physical force" where the offense's force element is satisfied merely by an offensive touching. That precedent controls the outcome in this case because Maryland's highest court—the last word on a state offense's definition in the categorical approach context—has said that robbery requires only an offensive

Case 1:21-cr-00094-RDB   Document 249   Filed 07/08/19   Page 39 of 48

touching or the threat of one.  It thus does not require the use or threatened use of

"physical force" and is not a "violent felony" under the ACCA.

As mentioned above, the Supreme Court in *Curtis Johnson v. United States*, 559

U.S. 133 (2010), concluded that "physical force" must mean "*violent* force—that is, force

capable of causing physical pain or injury to another person."  *Id.* at 140 (internal

quotation marks omitted).  Because the elements of battery can be satisfied by an

offensive, even if not harmful or violent, touching, such offensive touching does not rise

to level of "physical force" as used in the ACCA.  *See id.* at 145.

Earlier this year the Court reaffirmed the holding of *Curtis Johnson* in *Stokeling v.*

*United States*, 139 S. Ct. 544 (2019).  In *Stokeling*, the Court considered whether

Florida's robbery statute – which requires "resistance by the victim that is overcome by

the physical force of the offender" – qualifies as a "violent felony" under the ACCA.  *Id.*

at 549 (internal quotation marks omitted).  In holding that it does, the Court emphasized

that at common law, robbery "required force or violence."  *Id.* at 550.  "And violence was

committed if sufficient force was exerted to overcome the resistance encountered."  *Id.*

(alteration and internal quotation marks omitted).  The Court reasoned that because

Congress intended to incorporate this definition of force into ACCA's "physical force"

component, the fact that Florida's robbery statute can similarly be satisfied by

overcoming a victim's slight resistance led to the conclusion that robbery in Florida

requires "physical force" under the ACCA.  *See id.* at 551–52.

But the Court was clear that nothing in its analysis departed from the central

holding in *Curtis Johnson* that mere offensive touching – that is, "the level of force

necessary to commit common-law misdemeanor battery" – does not qualify as "physical force" under the ACCA. *Stokeling*, 139 S. Ct. at 552. The Court emphasized that "the nominal contact that [*Curtis*] *Johnson* addressed involved physical force that is different in kind from the violent force necessary to overcome resistance by a victim," and that "[t]he force necessary for misdemeanor battery does not require resistance or even physical aversion on the part of the victim." *Id.* at 553. The difference, the Court explained, is that overcoming a victim's resistance "necessarily involves a physical confrontation and struggle," sufficient to qualify as "physical force." *Id.* What is required is "force capable of causing physical pain or injury." *Id.* (internal quotation marks omitted).

Federal courts of appeals interpreting *Stokeling* have affirmed that it did not alter the fundamental holding in *Curtis Johnson*. In fact, this Court has held as much: "*Stokeling* reaffirmed *Johnson I*'s definition of physical force, and nothing therein supports the proposition that an offense that can be committed by an attempt to touch another in a rude or angry manner, such as spitting at another, categorically involves the use, attempted use, or threatened use of violent physical force." *United States v. Jones*, 914 F.3d 893, 905–06 (4th Cir. 2019). Other courts are in accord. *See, e.g.*, *United States v. Bong*, 913 F.3d 1252, 1261 (10th Cir. 2019).

These principles compel a conclusion that Maryland robbery requires only the same level of force as common-law battery or assault. In *Snowden v. State*, 583 A.2d 1056 (Md. 1991), Maryland's highest court provided the controlling definition of robbery in Maryland. There the court analyzed whether the offenses of assault and battery merge

with a conviction for robbery such that a defendant convicted of robbery cannot also be convicted of an assault or battery committed as part of the robbery. This analysis required the court to "scrutinize the elements of robbery and assault and battery." *Id.* at 1059. In doing so, the court explained that in Maryland, robbery is "a compound larceny": "It is a larceny from the person accomplished by either an assault (putting in fear) or a battery (violence)." *Id.* This Court has acknowledged and relied on this definition of Maryland robbery, *see United States v. Bell*, 901 F.3d 455, 472 (4th Cir. 2018), and numerous cases from Maryland's intermediate court of appeals have done so as well, *see, e.g.*, *Grogan v. State*, No. 2697, 2017 WL 3634113, at *5 (Md. Ct. Spec. App. Aug. 24, 2017); *Morris v. State*, 993 A.2d 716, 735 (Md. Ct. Spec. App. 2010); *Tilghman v. State*, 701 A.2d 847, 860 (Md. Ct. Spec. App. 1997); *Cortez v. State*, 656 A.2d 360, 363–64 (Md. Ct. Spec. App. 1995).

The court in *Snowden* explained that for purposes of Maryland robbery, "assault" and "battery" retain their common-law meanings: "Assault has been defined as either (1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery. Battery, another common-law offense, is the unlawful application of force to the person of another." *Snowden*, 583 A.2d at 1059 (citation and internal quotation marks omitted). Because battery can be an element of robbery, and because, under the circumstances in that case, it was unclear whether the battery for which the defendant had been convicted was considered by the jury in finding the elements of robbery, the court held that the defendant's battery and robbery convictions merged. *See id.* at 1060.

Consistent with this broad view of assault and battery, Md. Code Ann., Crim. Law § 3-203, which criminalizes common-law assault and battery, requires the State to prove only that "(1) the defendant caused *offensive physical contact* with, or harm to, the victim; (2) the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the contact was not consented to by the victim or was not legally justified." *Nicolas v. State*, 44 A.3d 396, 407 (Md. 2012) (emphasis added) (quoted in *Royal*, 731 F.3d at 341). Thus, a conviction for battery will stand if there is evidence of "*any* unlawful force used against the person of another, *no matter how slight*," *Williams v. State*, 179 A.3d 1006, 1015 (Md. 2018) (internal quotation marks omitted), and assault requires only "an apparent intention to inflict a battery and an apparent ability to carry out such intention," *Spencer v. State*, 30 A.3d 891, 897 (Md. 2011) (internal quotation marks omitted).

The Maryland Court of Appeals' definition of robbery in *Snowden* provides the controlling definition under the categorical approach and governs this case. *See United States v. Aparicio-Soria*, 740 F.3d 152, 154 (4th Cir. 2014) (en banc) ("To the extent that the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law."). As *Snowden* explains, robbery in Maryland occurs where there is larceny plus an offensive touching or a threat of offensive touching, *even without* any force or threat of force that is "capable of causing physical pain or injury." *Stokeling*, 139 S. Ct. at 553 (internal quotation marks omitted). Both *Curtis Johnson* and *Stokeling* hold that such a level of force is not "physical force" for purposes of the ACCA, and unsurprisingly, this Court

has already held that assault and battery under Maryland law does not require "physical force" under the ACCA. *See Karimi v. Holder*, 715 F.3d 561, 568 (4th Cir. 2013); *see also Royal*, 731 F.3d at 342. Because Maryland robbery can be committed using only an offensive touch that is not "capable of causing physical pain or injury," it is not a "violent felony" under the ACCA.

The Fourth Circuit sitting en banc used this same analysis in *Aparicio-Soria*. There, the Fourth Circuit considered whether resisting arrest in Maryland has as an element the use, attempted use, or threatened use of physical force against the person of another. 740 F.3d at 153. In concluding that it did not, the court looked to a case—*Nicolas*, 44 A.3d 396—in which the Maryland Court of Appeals held that the crime of second-degree assault merged with resisting arrest because the force required for sustaining a resisting arrest conviction "is the same as 'the offensive physical contact' that is required to find a defendant guilty of the battery variety of second degree assault." *Nicolas*, 44 A.3d at 409. The Fourth Circuit held that this statement from Maryland's highest court controlled the outcome of the case, and required the court to hold that resisting arrest did not have as an element the use of "physical force." *Aparicio-Soria*, 740 F.3d at 155–56. That reasoning applies with equal force here—Maryland robbery cannot be a "violent felony" because it requires only an offensive touching, as articulated by Maryland's highest court.

Because both assault and assault with the intent to rob are not violent felonies, Jordan is not an armed career criminal. This argument, which resulted in the imposition of an illegal 15-year sentence, should have been raised by appellate counsel – and the

failure to do so constitutes ineffective assistance of counsel. Jordan cannot now be

sentenced as an armed career criminal, and his 15-year sentence for this offense must be

vacated.

### 6.  <u>The § 924(c) counts are duplicitous and must be vacated.</u>

The § 924(c) counts that name both Hobbs Act conspiracy and Hobbs Act robbery

as crimes of violence (counts 10, 12 and 17), are duplicitous because they charge two

distinct offenses in a single count of the indictment. *See United States v. Robinson*, 855

F.3d 265, 269 (4th Cir. 2017). Trial counsel and appellate counsel were both

constitutionally ineffective for failing to raise this issue, particularly because it was

present at such an early stage of the case – the issuance of the Superseding Indictment on

May 18, 2011.

"A duplicitous indictment creates the risk that a jury divided on two different

offenses could nonetheless convict for the improperly fused double count." *United States*

*v. Burfoot*, 899 F.3d 326 (4th Cir. 2018) (internal quotations and citations omitted). "Such

a jury would not unanimously agree on the offense that the defendant committed,

violating the defendant's Sixth Amendment right to a unanimous verdict." *Robinson*, 855

F.3d at 269-70.

The Court of Appeals for the Eleventh Circuit specifically recognized the problem

of duplicity when the government charges multiple offenses as crimes of violence to

support a §924(c) charge. In *In re Gomez*, 830 F.3d 1225 (11th Cir. 2016), the defendant

was charged with violating §924(c) based on multiple crimes of violence and a drug

trafficking offense. The Court observed that, "we can't know what, if anything, the jury

found with regard to Gomez's connection to a gun and these crimes. That is because the jurors had multiple crimes to consider in a single count, so they could have convicted Gomez of the §924(c) offense without reaching unanimous agreement on during which crime it was that Gomez possessed the firearm." *Id*. at 1227.

In this case, half of the jurors could have found that Jordan aided and abetted the possession of a firearm during the Hobbs Act conspiracy, while other half could have found that he aided and abetted the possession of a firearm during a Hobbs Act robbery. If that actually happened, the Jury would not have reached a consensus on either type of offense, and Jordan's constitutional right to a unanimous jury verdict would have been violated. It was therefore a fundamental flaw to the proceedings that the Court did not require the Jury to reach a unanimous verdict as to either predicate on which the §924(c) conviction was based.

Furthermore, because the §924(c) counts increased Graham's mandatory minimum sentence, a jury must unanimously agree to the facts upon which the conviction is based. In *Alleyene v. United States*, 133 S. Ct. 2151 (2013), the Supreme Court held that facts which increase the mandatory minimum sentence "are elements and must be submitted to the jury and found beyond a reasonable doubt." *Id*. at 2158. However, "[a]n indictment that lists multiple predicates in a single §924(c) count allows for a defendant's mandatory minimum sentence to be increased without the unanimity *Alleyene* required." *Gomez*, 830 F.3d at 1227. Jordan's convictions under § 924(c) in counts 10, 12 and 17 violate his Sixth Amendment right to a unanimous verdict and should be vacated.

45

Case 1:11-cr-00094-RDB   Document 249   Filed 07/08/19   Page 46 of 48

**7.  Under *Rehaif v. United States*, Jordan's § 922(g) conviction is invalid.**

Jordan's conviction for being a prohibited person in possession of a firearm must be vacated because the Court did not instruct the jury that, in order to find Jordan guilty of 18 U.S.C. § 922(g), the Government had to prove he was aware of his status as a prohibited person. This flaw in Jordan's conviction is cognizable as a violation of United States law and the Constitution that resulted in a miscarriage of justice.

In a recent Supreme Court decision, *Rehaif v. United States*, 588 U.S. ___ (2019), the Court held that in order for the Government to satisfy the "knowing" requirement of 18 U.S.C. § 922(g), it had to prove that the defendant (a) knew he possessed the firearm and (b) knew he was a prohibited person. In *Rehaif*, the Government failed to do this, so the defendant's conviction was reversed.

The same principle applies to Jordan. His conviction in Count 2, for a violation of 18 U.S.C. § 922(g), required the Government to prove that Jordan knew he was a convicted felon who was not permitted to possess a firearm. But the Government offered no evidence to this effect.

The Court instructed the Jury on this element of the offense as follows:

> Nor is the government required to prove that at the time of the possession the defendant knew that he was breaking the law.  It is sufficient if you find that the defendant possessed a firearm or ammunition voluntarily, and not by accident or mistake.  You also must find that the defendant knew that he was possessing a firearm or ammunition.

Tr. 4/27/12 p. 119.

Because the Court incorrectly instructed the Jury by omitting the second prong of the knowledge requirement, and because the Government failed to introduce evidence that Jordan had knowledge of his prohibited-person status, Jordan was convicted without having satisfied the elements of the crime. His conviction must be reversed.

## V. CONCLUSION

For the reasons described above, Jordan respectfully asks that this Honorable Court grant this Motion and vacate his sentence, reduce his sentence, or grant him any other appropriate remedy to cure the constitutional violations he suffered. Jordan respectfully requests a hearing on this Motion.

Respectfully Submitted,

_____/s/_____
C. Justin Brown
BROWN LAW
1 North Charles St., Suite 1301
Baltimore, Maryland 21201
Tel: 410-244-5444
Fax: 410-934-3208

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2019, a copy of the foregoing was

filed via ECF, causing it to be delivered to all counsel of record, including respondent,

the Office of the United States Attorney.

_____/s/_____

C. Justin Brown